IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **EQUINE LEGAL SOLUTIONS, PC**, <br><br> Plaintiff, <br><br> v. <br><br> **THIS OLD HORSE, INC.; NANCY TURNER; JOTFORM, INC.; GOOGLE, LLC**, <br><br> Defendants. | Case No. 3:22-cv-269-SI <br><br> **OPINION AND ORDER** |

Rachel Kosmal McCart, PRESERVE LEGAL SOLUTIONS PC, 38954 Proctor Blvd., Suite 186, Sandy, OR 97055. Of Attorneys for Plaintiff.

William G. Wardlow, WARDLOW LAW LLC, 111 NW Hawthorne Ave, Suite 7, Bend, OR 97703. Of Attorneys for Defendants This Old Horse, Inc. and Nancy Turner.

John D. Ostrander and William A. Drew, ELLIOTT, OSTANDER & PRESTON PC, 707 SW Washington Street, Suite 1500, Portland, OR 97205. Of Attorneys for Defendant Jotform, Inc.

**Michael H. Simon, District Judge.**

Equine Legal Solutions, PC (Equine) brings this lawsuit against This Old Horse, Inc.

(TOH), Nancy Turner (Turner), and Jotform, Inc. (Jotform).[1] According to Turner and TOH,

---

[1] Equine voluntarily dismissed its claims against Google, LLC.

Turner is the President of TOH, a volunteer-based 501(c)(3) nonprofit equine welfare organization. This dispute arises from the use of legal forms that Equine created and copyrighted. Against all defendants, Equine alleges copyright infringement. Equine also alleges against only TOH and Turner breach of contract and conversion. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Turner moves to dismiss with prejudice all three claims against her, arguing that she is not personally liable for the actions that she took as an officer of TOH. Turner also contends that Equine's breach of contract claim should be dismissed because Equine may not pierce the corporate veil of TOH. In addition, raised for the first time in her reply brief, Turner adds that Equine's conversion claim is barred by the doctrine of independent duty.

After Turner's motion to dismiss had been fully briefed but before oral argument, Equine moved to amend under Rule 15(a)(2). In its proposed First Amended Complaint, Equine asserts only a claim of copyright infringement against TOH, Turner, and Jotform. TOH and Turner oppose Equine's motion to amend. They argue that Equine moved to amend in bad faith, seeking to avoid liability for "prevailing party" attorney fees and costs that would otherwise be available to TOH and Turner under the fee-shifting provision of the alleged contract. For the reasons stated below, the Court grants in part and denies in part Turner's motion to dismiss and grants Equine's motion to amend. Equine may file a First Amended Complaint within 14 days.

## STANDARDS

**A.  Motion to Dismiss for Failure to State a Claim**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint

and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

**B. Motion to Amend**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the "court should freely give leave [to amend a pleading] when justice so requires." A district court should apply Rule 15's "policy of favoring amendments with extreme liberality." *Price v. Kramer*, 200 F.3d 1237, 1250 (9th Cir. 2000) (cleaned up). The purpose of the rule "is 'to facilitate decision on the

merits, rather than on the pleadings or technicalities.'" *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011)). A district court, however, may, within its discretion, deny a motion to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (alteration in original) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)). "Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Futility of amendment, however, "can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Generally, however, "[a]bsent prejudice, or a strong showing of any of the remaining [four] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052 (alterations added, emphasis in original). When weighing the factors, all inferences should be made in favor of granting the motion to amend. *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

## BACKGROUND

Equine alleges that it provides equine-related legal services to individuals in Oregon, California, Washington, and New York. Compl. (ECF 1) at ¶ 5. As a part of this business, Equine developed a series of copyrighted legal forms for equine-related transactions. *Id.* at ¶ 10. Parties can access these forms on Equine's website and download them for a fee after agreeing to a "License Agreement" (Agreement). *Id.* The Agreement "specifically prohibits Plaintiff's customers from editing Plaintiff's forms or otherwise creating derivative works from Plaintiff's

forms." *Id*. at 11. Equine's Agreement also prohibits Equine's customers from reselling Equine's forms or posting them to the internet. *Id.*

According to Turner and TOH, Turner is the President of TOH, a 501(c)(3) nonprofit organization. Equine alleges that Turner "at all relevant times . . . acted as an employee or agent of Defendant TOH." *Id*. ¶ 13. On June 18, 2013, Turner visited Equine's website, purchased three items—the "Equine Boarding Forms Package," the "Riding Instruction Agreement Package," and the "Equine Donation Agreement (EDA),"—and downloaded these documents. *Id.* ¶ 14.

After downloading the documents, Turner and TOH allegedly used the "Equine Boarding Agreement" (EBA) to create a derivative document (Doc 1), which contained "multiple paragraphs nearly identical to sections of Plaintiff's Equine Boarding Agreement." *Id*. ¶ 15. Equine also alleges that Turner and TOH visited Jotform's website, which includes a "full-featured online form builder that makes it easy to create robust forms and collect important data." *Id.* ¶ 16. Turner and TOH purchased a subscription to Jotform's service and created an online, fillable form from Doc. 1 (Doc. 2). *Id*. ¶ 16. Turner and TOH also allegedly used the EDA to create a document "nearly identical" to the EDA (Doc 3). *Id.* ¶ 17. They then allegedly used Jotform's service to create an online fillable form from Doc. 3 (Doc. 4). *Id*. ¶ 18.

Equine contends that after Turner and TOH created Doc. 2 and Doc. 4, these documents became available to the public on Jotform's website. *Id*. ¶ 21. Equine further alleges that Turner and TOH used the allegedly infringing documents "in the business operations" and that Turner and TOH distributed these documents to "an unknown number of additional parties." *Id*. ¶ 28. Equine contends that because of the actions of Turner and TOH, unknown other parties have

PAGE 5 – OPINION AND ORDER

gained possession of Doc. 2 and Doc. 4 from Jotform's website, have made further derivative works from them, and have profited from the use of those other derivative works. *Id.*

Equine maintains that it holds valid copyrights in both the EBA and the EDA and is the sole owner of all relevant exclusive rights. Equine contends that Turner and TOH infringed on Equine's exclusive rights in violation of 17 U.S.C. § 106. Equine alleges that it has not authorized Defendants to copy, reproduce, display, distribute, or sell copies of the allegedly infringing documents "except for personal and non-commercial use pursuant to the License Agreement." Compl. at ¶ 37. Equine seeks copyright infringement damages under 17 U.S.C. § 504(c), attorney fees and costs under 17 U.S.C. § 505, and injunctive relief prohibiting further infringement under 17 U.S.C. § 502.

Equine further asserts that Turner and TOH breached the Agreement when they created the allegedly infringing documents, which Equine alleges are derivative of the EBA and the EDA. Equine seeks contract damages resulting from the alleged breach of the Agreement as well as attorney fees and costs under the Agreement. Finally, Equine alleges that Turner and TOH intentionally converted the EBA and the EDA for "commercial use."

## TURNER'S MOTION TO DISMISS

TOH and Jotform have answered the complaint. Turner, however, has moved to dismiss all three claims asserted against her, arguing that, among other things, she is immune from liability because at all relevant times she "acted as an employee or agent of Defendant TOH." *Id.* ¶ 13. Turner adds that Equine cannot pierce TOH's corporate veil to hold Turner personally liable on Equine's breach of contract claim. Turner also contends the Copyright Act preempts Equine's conversion claim. Finally, Turner contends that the independent duty doctrine limits Equine to contract remedies, thereby precluding its claim of conversion.

A. **Copyright Infringement**

   1. **Facial Plausibility**

"To establish a prima facie case of direct infringement, a plaintiff 'must show ownership of the allegedly infringed material' and 'demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.'" *Perfect 10 v. Giganews, Inc.,* 847 F.3d 657, 666 (9th Cir. 2017) (quoting *A&M Records, Inc., v. Napster Inc.,* 239 F.3d 1004, 1013 (9th Cir. 2001). "In addition, direct infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant." *Id.* The "volitional conduct" prong stands in for the traditional notion of proximate cause, requiring the plaintiff to show the defendant's conduct was a direct cause of the infringement. *Id.* "Pursuant to the Copyright Act, the holder of a copyright has the exclusive right 'to do and to authorize' the reproduction and distribution of a protected work, among other things." *Herer v. Ah Ha Pub., LLC*, 927 F. Supp. 2d 1080, 1090 (D. Or. 2013) (quoting 17 U.S.C. § 106). Included in a copyright holder's exclusive rights are the right "to prepare derivative works based upon the copyrighted work" and the right "to distribute copies…of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(2), (3).

Turner argues that Equine failed to state facts sufficient to show a violation of any of Equine's exclusive rights. Equine, however, states enough facts to assert its copyright infringement claim as derivative works and in violation of Equine's distribution rights. Equine alleges that it owns copyrights not only for the EBA and the EDA, but for all the forms Turner and TOH allegedly purchased and downloaded. Equine located several of the allegedly infringing documents (Doc. 2 and Doc. 4) by conducting an internet search using unique text found in its forms. The search was successful because these documents contain "nearly identical" language to the EBA and the EDA. Along with the assertion that Turner and TOH had visited

Equine's website and purchased the EBA and the EDA, Equine alleges facts that allow for the reasonable inference that the allegedly infringing documents are derivative of the EBA or the EDA. Turner did not receive a license from Equine that allowed Turner to use Equine's work in the allegedly infringing manner. Instead, the Agreement reasserted Equine's 's exclusive right to control the creation of derivative works. The facts alleged sufficiently state a claim that Turner and TOH directly infringed on Equine's exclusive right to create derivative forms of its copyrighted materials.

Equine also retained the right to control the distribution of copies of the EBA and the EDA. Under that right, Equine operates a website where its copyrighted documents, including the EBA and the EDA, are sold and licensed. Equine alleges that Turner and TOH violated Equine's distribution rights by making available a version of Equine's copyrighted works on Jotform's website because the availability of free versions of the forms online undermines Equine's "sale and license" distribution scheme. Equine has alleged enough facts to permit the reasonable inference that Turner and TOH's actions directly harmed Equine's ability to control the distribution of its copyrighted works because Equine was no longer the *exclusive* distributor of the EBA and the EDA.

In summary, Equine has alleged enough facts to claim ownership of validly copyrighted material and "volitional" actions by Turner and TOH that directly violated Equine's exclusive rights in the copyrighted material. These facts state a claim for copyright infringement.

**2. Individual Liability**

Turner argues she cannot be held personally liable for copyright infringement because Equine alleges, and thus admits, that Turner "at all relevant times" acted as an agent or an employee of TOH. This fact of agency, however, is not preclusive of Turner's individual liability under the copyright law because directors and officers of corporations do not enjoy immunity

from tort liability. "A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Transgo Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1021 (9th Cir. 1985) (quoting *Murphy Tugboat Co., v. Shipowners & Merchants Towboat Co.,* 467 F. Supp. 841, 852 (N.D. Cal 1979), *aff'd sub nom. Murphy Tugboat Co. v. Crowley,* 658 F.2d 1256 (9th Cir. 1981), *cert. denied* 455 U.S. 1018); *See* Ballantine, *On Corporations*, § 119 (1930) ("It is thoroughly well settled that a man is personally liable for all torts committed by him . . . [a]nd this is true to the full extent of the torts committed by the officers or agents of a corporation in the management of its affairs.").

Citing *Murphy*, Turner argues that she should not be held personally liable for her alleged copyright infringement because her actions were not "inherently wrongful." 467 F. Supp. at 852 ("Such approval or ratification [of tortious actions] must…be of acts or conduct that is inherently unlawful."). Turner's argument fails because it does not distinguish between actions themselves and the "approval or ratification" of actions. In *Murphy*, the plaintiff sought to attach liability to an individual corporate officer for his involvement in an anticompetitive corporate policy that, the plaintiff alleged, violated the Sherman Act. *Id.* at 852-53. The court refused to hold the defendant individually liable because "[h]is direct participation was limited to the purchase of the Murphy Pacific tugs" so "[w]hile he must be assumed, as [CEO], knowingly to have approved or ratified the policy of refusing to work vessels with competitors, that policy also cannot be said to be inherently wrongful." *Id.* at 853.

The relevant conduct in *Murphy* was the *approval* of an anticompetitive policy. Also, because the conduct fell under the Sherman Act, the court needed to balance "the often-uncertain line between proper and improper conduct, and the social interest in not deterring economically

PAGE 9 – OPINION AND ORDER

useful conduct" typical of a competitive market. *Id.* Here, the alleged wrongful conduct was not the approval of a policy or the approval of an action by another, but instead it was the taking of the challenged action itself. Moreover, the balance of interests found in applying the Sherman Act are not present in the Copyright Act. *See Blue Mako, Inc., v. Minidis*, 2008 WL 11334205, at *13 (C.D. Cal June 23, 2008) (rejecting the applicability of the "inherently wrongful" standard to a case involving trademark infringement because "[i]n *Murphy*, the court made clear…that it based the limitation on personal liability specifically on the policies and case law of the Sherman Act").

Courts in the Ninth Circuit have applied individual liability to corporate officers for copyright infringement and related intellectual property offenses without regard for the inherent wrongfulness of their actions. *See Comm. for Idaho's High Desert v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) (adopting the *Transgo* rule for trademark infringement); *DISH Network, LLC v. Jadoo TV, Inc.,* 2020 WL 5816579, at *4 (N.D. Cal, Sept. 30. 2020) ("There are no compelling reasons why the *Yost* rule would apply to federal trademark claims but not copyright claims."). Indeed, courts have applied liability to individual corporate officers in copyright infringement cases more broadly than in the *Murphy* context. Even absent direct action, inherently wrongful conduct is unnecessary for corporate officers and directors to be held personally liable for copyright infringement. *See Foreverendeavor Music, Inc., v. S.M.B., Inc.,* 701 F.Supp, 791, 793-94 (W.D. Wash 1988) ("[A] corporate officer will be liable as a joint tortfeasor with the corporation in a copyright infringement case where the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement." (quoting *Sailor Music v. Mai Kai of Concord, Inc.,* 640 F. Supp. 629, 633 (D.N.H. 1986))); *Bell v. Moawad Grp., LLC,* 326 F. Supp.

3d 918, 930 (D. Ariz. 2018) (applying liability to a corporate president because he was the "guiding spirit" behind the copyright violation).

Accepting Equine's allegations as true and giving Equine the benefit of all reasonable inferences, as the Court must do at this stage of the lawsuit, Turner can be held personally liable for copyright infringement. As President of TOH, Turner is a corporate officer who allegedly purchased and downloaded the EBA and the EDA, created allegedly derivative documents, and uploaded the documents to Jotform's website. The facts plausibly support the proposition that Turner *acted* in violation of the Copyright Act by creating and distributing unlicensed derivatives of copyrighted materials. She, therefore, can be held personally liable for the alleged copyright violation.

## B. Breach of Contract

Equine's Complaint at paragraph 41 initially states that "[t]he License Agreement is a valid contract between Defendant Turner and Plaintiff." That paragraph continues and alleges that "Defendant Turner entered into the License Agreement in her capacity as an agent of Defendant TOH, and therefore Defendant TOH is bound by the terms of the License Agreement." *Id*. Equine's Complaint also alleges that "at all relevant times, Defendant Turner acted as an employee or agent of Defendant TOH." Compl. ¶ 13. The *Transgo* rule that a "corporate officer or director is, in general, personally liable for all *torts* which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf," *Transgo*, 768 F.2d at 1021 (emphasis added), does not extend to liability in *contract*. Accordingly, as currently pleaded, Equine's Complaint does not plausibly allege contractual liability on the part of Turner.

In response to Turner's motion to dismiss, Equine states that it *may* seek to pierce the corporate veil of TOH to hold Turner personally liable as an "alter ego" for any alleged breach of

PAGE 11 – OPINION AND ORDER

the Agreement by TOH. Both Turner and Equine cite *Amfac Foods, Inc. v. Int'l Sys. & Control Corp.,* 294 Or. 94 (1982), as controlling Oregon law to determine when a corporate veil can be pierced. In *Amfac*, the Oregon Supreme Court created a three-part test:

> [T]he plaintiff must allege and prove not only that the debtor corporation was under the actual control of the shareholder, *but also that the plaintiff's inability to collect from the corporation* resulted from some form of improper conduct on the part of the shareholder. . . . The shareholder's alleged control over the corporation must not be only potential but must actually have been exercised in a manner either causing the plaintiff to enter the transaction with the corporation or causing the corporation's default on the transaction or a resulting obligation. Likewise, *the shareholder's conduct must have been improper* either in relation to the plaintiff's entering the transaction or in preventing or interfering with the corporation's performance or ability to perform its obligations toward the plaintiff.

*Id.* at 108-09 (emphasis added). Accordingly, a plaintiff in Oregon can pierce the corporate veil in connection with an alleged breach of contract when a defendant shareholder (1) has actual control of a corporation, (2) exercises that control in an "improper" manner, and (3) harms the plaintiff in a manner that prevents the ability to collect from the corporation. *Id.* Equine, however, has failed to allege the prerequisites required by *Amfac*.

To pierce a corporate veil generally requires some amount of "moral culpability," which "narrows the range of illegal or tortious conduct." *State ex rel. Neidig v. Superior Nat. Ins. Co.,* 343 Or. 434, 460 (2007). In this context, improper conduct needed to pierce a corporate veil must in some way seek to manipulate the corporate form to the detriment of the corporation's creditors. *See id.* at 460 ("[C]onduct that can be considered 'improper'" includes "oppressive or manipulative conduct that uses a corporate form to harm a creditor or evade regulation."); *Schlecht v. Equitable Builders,* 272 Or. 92, 97 (1975) ("[T]he corporate veil may be lifted to protect persons whose rights have been jeopardized by the corporate device.") (quoting *Abbot v. Bob's U-Drive, et al.*, 222 Or. 147, 161-62 (1960)).

PAGE 12 – OPINION AND ORDER

As currently pleaded, Equine has not alleged that Turner abused the corporate form of TOH to avoid liability in its breach of contract claim. Nor has Equine alleged that such improper conduct, were it to exist, impeded Equine's ability to collect from TOH. Accordingly, Equine fails to allege sufficient facts to pierce the corporate veil of TOH.

**C. Conversion**

Turner provides three arguments for why she cannot be held personally liable for conversion. First, Turner reiterates the point that individuals are not personally liable for torts committed while acting as an agent or employee of a corporation. Second, Turner contends that the independent duty doctrine precludes Equine's conversion claim, a point that Turner makes for the first time in her reply brief.[2] Third, Turner contends the Copyright Act preempts Equine's conversion claim.

**1. Facial Plausibility**

"To state a claim for conversion, a party must establish the intentional exercise of dominion or control over a chattel that so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Emmert v. No Problem Harry, Inc.*, 222 Or.App. 151, 159-60 (2008) (citing *Mustola v. Toddy*, 253 Or. 658, 663 (1969)). "The gravamen of the tort is the defendant's intent to exercise control over the chattel inconsistently with the plaintiff's rights." *Naas v. Lucas*, 86 Or.App. 406, 409 (1987).

---

[2] The Court generally disregards arguments raised for the first time in a reply brief. *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) ("arguments raised for the first time in a reply brief are waived"); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Given the Court's disposition of that argument, however, the Court will address it in the interest of judicial efficiency moving forward.

For the same reasons that Equine adequately stated a claim against Turner for copyright infringement, so too does it state a claim against her for conversion. Although Equine's allegation that Turner's production of a derivative form may not rise to the level of a "serious interference" with Equine's right to control the EBA or EDA, the Court can reasonably infer that Turner converted the EBA and EDA when the derivative forms were uploaded to Jotform. Equine located the derivative forms by searching for language specific to the documents. Presumably, individuals who wished to use Equine's documents without paying the required fee could also search for the text of the document and find Turner's "nearly identical" derivatives. Turner's use of the EBA and EDA could be "inconsistent" with Equine's right to control the distribution of the EBA and EDA through sale and licensing because the availability of free versions online undermines Equine's "sale and licensing" distribution scheme. Equine has alleged enough facts to permit the reasonable inference that Turner's conduct seriously interfered with Equine's right to control the reproduction and distribution of the EBA and the EDA.

### 2.  Individual Liability

Turner argues she cannot be held personally liable for conversion because "ordinary rules" of vicarious liability apply. The argument is without merit. Oregon "ordinarily" allows for directors and officers to be found personally liable for any torts they personally commit. *Pelton v. Gold Hill Canal Co.*, 72 Or. 353, 358 (1914) ("[A]lthough directors are not liable for negligent torts of subordinate agents in which they have not participated, they are clearly liable ex delicto for any tort in which they participate."); *Lewis v. Devils Lake Rock Crushing Co.,* 274 Or. 293, 298 (1976) ("An officer's personal liability [for conversion] is based upon his participation, knowledge amounting to acquiescence or the breach of some duty he owes to the owner of the property." (quoting William Meade Fletcher, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 1140 (Perm. ed. 1975))). The Court rejects Turner's argument she cannot be

held personally liable for the conversion that she allegedly committed, even if she acted as an authorized agent of TOH.

### 3. Independent Duty Doctrine

Turner contends Equine's conversion claim is barred by the independent duty doctrine. Turner cites *Puget Soundkeeper All. v. APM Terminals Tacoma, LLC.*, 545 F. Supp. 3d 893 (W.D. Wash 2021), as defining the independent duty doctrine. But *Puget Soundkeeper* was based on Washington law, not Oregon law. In Oregon, an independent tort duty must arise out of a "special relationship" between the parties. *See Conway v. Pacific Univ.,* 324 Or. 231, 237 (1996) (finding a "special relationship" necessary for a duty to avoid negligent misrepresentation to arise); *Abraham v. T. Henry Const. Inc.,* 230 Or.App. 564, 568 (2009) (finding that the independent standard of care must derive either from a "special relationship" between the parties or from a statute). The Oregon Supreme Court derived the "special relationship" rule from a review of previous cases outlining whether a contract or tort remedy would be appropriate:

> When the *relationship* involved is between contracting parties, and the gravamen of the complaint is that one party caused damage to the other by *negligently* performing its obligations under the contract, then, and even though the relationship between the parties arises out of the contract, the injured party may bring a claim for negligence if the other party is subject to a standard of care independent of the terms of the contract. If the plaintiff's claim is based solely on a breach of a provision in the contract, which itself spells out the party's obligation, then the remedy will be only in contract[.]

*Georgetown Realty v. The Home Ins. Co.,* 313 Or. 97, 106 (1992) (emphasis added). The rule established in *Georgetown Realty* is not so much an independent duty as a heightened duty based on a "special relationship" between the plaintiff and the defendant. Tort liability fills the gap between the contractual obligations and the relational heightened duty.

Further, an inquiry into the nature of the relationship between Turner and Equine is unnecessary because Oregon courts have rejected extending the *Georgetown* rule to intentional torts. *Murphy v. Allstate Ins. Co.,* 251 Or. App. 316, 328 (2012); *McNeff v. Emmert*, 260 Or. App. 239, 249-50 (2013). Relatedly, other federal courts in the District of Oregon have accepted the *Murphy* rule as barring *Georgetown* from applying to intentional torts. *See, e.g.*, *Anderson v. Bank of Am., N.A.*, 2014 WL 4631222 (D. Or. Sept. 12, 2014). Because conversion is an intentional tort, *Georgetown* and its progeny do not apply here.

### 4. Preemption

The Copyright Act expressly preempts certain state-law causes of action when the claim falls within the subject matter of the Copyright Act and does not assert any extra elements different from a copyright infringement claim. "To survive preemption, a state cause of action must assert rights that are qualitatively different from the rights protected by copyright." *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 980 (9th Cir. 2011). For conversion claims, however, the existence of "extra elements" is not dispositive. *See Zito v. Steeplechase Films, Inc.,* 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003) ("[C]onversion claims generally are preempted even though there is an additional element of intent."). "[W]here a plaintiff is only seeking damages from a defendant's reproduction of a work—and not the actual return of a physical piece of property—the claim is preempted." *Firoozye v. Earthlink Network,* 153 F. Supp. 2d 1115, 1130 (N.D. Cal 2001); *See Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal 1996) (finding that the "allegation that Defendants have wrongfully used and distributed Plaintiff's work of authorship… is 'part and parcel' of a copyright claim"); *Dynamic Measurement Grp., Inc. v. Univ. of Oregon*, 121 F. Supp. 3d 1047, 1059 (D. Or. 2015) (rejecting the argument that conversion law in Oregon is "qualitatively different" from copyright law).

Equine's conversion claim is preempted by the Copyright Act. Equine does not allege additional elements specific to the conversion claim and different from the copyright infringement claim beyond the element of intent. Instead, the conversion claim merely reasserts Equine's ownership in the EBA and the EDA and concludes Turner intentionally converted both to commercial use for Turner's benefit. *See* Compl. at ¶¶ 47-48. Equine's alleged facts in support of its conversion claim are a facsimile of the facts in support of its copyright infringement claim. The same copyrighted materials—the EBA and the EDA—are the subject of both claims. The same rights—to create derivative works and to distribute—are the subject both claims as well. The rights asserted are found in 17 U.S.C. § 106. Finally, Turner's alleged actions violating those rights are the same in both claims. Because Equine does not allege that Turner improperly took the EBA or the EDA, nor any other distinguishing facts, the conversion claim is preempted.

## EQUINE'S MOTION TO AMEND

Equine has moved under Rule 15(a)(2) of the Federal Rules of Civil Procedure for leave to file an amended complaint that would allege only a claim of copyright infringement and against TOH, Turner, and Jotform. TOH and Turner oppose Equine's motion, arguing that Turner's motion to amend is brought in bad faith and would prejudice TOH and Turner in their ability to seek attorney fees. The Court does not see sufficient evidence of bad faith on the part of Equine. Similarly, the Court does not see how allowing the motion to amend would unfairly prejudice either TOH or Turner.

If this lawsuit reaches a contested final judgment, it may be necessary for the Court to rule on one or more petitions for attorney fees. It may even be necessary for the Court to decide who is the prevailing party *for each claim*. *See* Or. Rev. Stat. § 20.077(1) ("In any action or suit in which one or more claims are asserted for which an award of attorney fees is either authorized or required, the prevailing party *on each claim* shall be determined as provided in this section.")

(emphasis added); *see also Moir v. Ozeruga*, 313 Or. App. 9, 15 (2021) ("trial courts determine which party is the prevailing party on a claim-by-claim basis, but there can only be one prevailing party for each claim"). But all of that can—and should—wait until the conclusion of this lawsuit. For now, Equine has satisfied Rule 15(a)(2) and may amend.

## CONCLUSION

The Court grants in part Turner's Motion to Dismiss (ECF 24). The Court dismisses without prejudice Equine's claims against Turner that allege breach of contract and conversion. The Court grants Equine's Motion for Leave to File First Amended Complaint (ECF 34). Equine may file a First Amended Complaint within 14 days from the date of this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 5th day of July, 2022.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge
